# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOGAN IRELAND and NICHOLAS BEAR BADE, | |
| Plaintiffs, | Civil A. No. 25-cv-01918-CPO-AMD |
| v. | |
| PETER B. HEGSETH, in his official capacity as Secretary of Defense; THE UNITED STATES OF AMERICA; GARY ASHWORTH, in his official capacity as Acting Secretary of the Air Force; and THE UNITED STATES DEPARTMENT OF THE AIR FORCE, | **PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION FOR TRO**<br><br>**Motion Day: March 24, 2025** |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................3

   I.    Plaintiffs Are Likely to Prevail on the Merits .................................................3

   II.   Plaintiffs Are Already Suffering Irreparable Harm and Face the Imminent Irreparable Harm of Involuntary Separation For A Characteristic Unrelated to their Ability to Serve ..........................................7

       A.   The Uncontradicted Record Shows Plaintiffs Will Suffer Irreparable Harm ...............................................................................7

       B.   The Government's Citations to Third Circuit Authority Pertaining to Irreparable Harm are Inapposite ........................................9

   III.  Plaintiffs are Entitled to a Temporary Restraining Order Notwithstanding the D.C. District Court's Preliminary Injunction ..............12

CONCLUSION ....................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Rumsfeld*,
   389 F. Supp. 2d 579 (D. Del. 2005) ................................................................. 11

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety*
   *& Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024), *cert. denied*,
   2025 WL 76443 (U.S. Jan. 13, 2025) ................................................................ 10

*Dillard v. Brown*,
   652 F.2d 316 (3d Cir. 1981) ................................................................................ 6

*Goldman v. Weinberger,*
   475 U.S. 503 (1986) ............................................................................................ 6

*Kyocera Document Sols. Am., Inc. v. Div. of Admin.*,
   708 F. Supp. 3d 531 (D.N.J. 2023) ................................................................... 10

*Nelson v. Miller*,
   373 F.2d 474 (3d Cir. 1967) .............................................................................. 11

*Roe v. Dep't of Def.*,
   947 F.3d 207 (4th Cir. 2020) ............................................................................... 6

*Singh v. Berger,*
   56 F.4th 88 (D.C. Cir. 2022) ............................................................................... 6

*U.S. Navy SEALs 1-26 v. Biden*,
   578 F. Supp. 3d 822 (N.D. Tex. 2022) ............................................................... 6

*United States v. Alvarez*,
   567 U.S. 709 (2012) .......................................................................................... 11

## INTRODUCTION

Plaintiffs—two transgender service members—seek a temporary restraining order preventing Defendants from initiating administrative separation proceedings against them pursuant to the military's implementation of two Executive Orders and the policies promulgated thereunder, which mandate their discharge from the armed forces.

Following Plaintiffs' filing of their complaint and motion for a temporary restraining order in this case, the District Court for the District of Columbia issued an order enjoining, in its entirety, the Executive Order barring transgender individuals from serving in the U.S. Military. ECF No. 12-1 ("*Talbott* Order"). The *Talbott* Court concluded that the plaintiffs were likely to prevail on their claims that the Order violates the Fifth Amendment's equal protection guarantee because it discriminates based on sex and transgender status and cannot satisfy intermediate scrutiny, and because it was "soaked in animus" and therefore fails scrutiny under any standard of review. ECF No. 12-2 at 64 ("*Talbott* Decision"). Nothing in Defendants' opposition offers any persuasive reason for this Court to reach a different conclusion than the District Court for the District of Columbia did in its meticulous and comprehensive opinion: it is "highly unlikely that the Military Ban will survive judicial review, whether it be rational basis or intermediate scrutiny." *Talbott* Decision at 5.

Moreover, contrary to Defendants' argument, the harms that Plaintiffs face are imminent, irreparable, and severe. Evidence before this Court submitted by Defendants marks March 26, 2025 as a critical date for the potential initiation of discharge proceedings. *See* ECF No. 13-8 ("February 28, 2025 Clarifying Guidance"); Defs' Br. at 19. A March 21 Memorandum filed with the Court in *Talbott* reconfirms that service members identified as transgender "will be processed for involuntary separation." Ex. A (March 21, 2025 Memorandum). The *Talbott* Order does not ensure such proceedings will not begin against Plaintiffs, as Defendants continue to issue implementing directives on a weekly and sometimes daily basis, causing abrupt and unpredictable changes. *See, e.g.*, ECF No. 13 (listing policies and guidance implementing challenged Executive Orders since January 28, 2025). In addition, the *Talbott* decision, including the recently issued preliminary injunction, is far from settled. As recently as today, Defendants have sought to stay that injunction pending a motion for its dissolution on the basis of a new guidance document, also issued this morning. ECF No. 91, *Talbott v. United States*, 25-cv-00240-ACR (D.D.C. March 21, 2025).

The stakes for the Plaintiffs of having separation proceedings initiated against them are grave. And the likelihood of the resolution of the merits in this case in Plaintiffs' favor are high. Defendants will suffer no injury in being enjoined from initiating administrative separation proceedings against these two Plaintiffs for the

next two weeks while the dust settles, if it does, in a matter of this magnitude that has such serious repercussions for the military careers to which these Plaintiffs have devoted their lives.

## ARGUMENT

I. **Plaintiffs Are Likely to Prevail on the Merits**

Nothing in Defendants' opposition offers any persuasive reason for this Court to reach a different conclusion than Judge Reyes did in her meticulous and comprehensive opinion: it is "highly unlikely that the Military Ban will survive judicial review, whether it be rational basis or intermediate scrutiny." *Talbott* Decision at 5.

In opposing Plaintiffs' request for a TRO, Defendants repeat the same arguments that were made and correctly rejected in *Talbott*. The *Talbott* Court concluded: (1) The plaintiffs' impending separation from the military, loss of their careers, and deprivation of their constitutional rights constituted irreparable harm. *Id.* at 74–75. (2) Deference to military judgment does not mean complete abdication of courts' responsibility to review facially discriminatory military policies and is appropriate only when a policy represents the considered judgment of military professionals after meaningful study and review, none of which apply to the ban. *Id.* at 39–46. (3) The ban is subject to intermediate scrutiny because it classifies based on sex and transgender status. *Id.* at 45–57. (4) The ban fails intermediate scrutiny

- 3 -

because Defendants offer no evidence that establishes any connection between the ban and policy objectives it allegedly furthers, and in fact, the available evidence—including Defendants' own submissions—contradicts rather than supports a ban. *Id.* at 57–64. (5) The ban would independently fail any level of constitutional review because both the Executive Order and the Hegseth Policy are "soaked in animus and dripping with pretext." *Id.* at 64. (6) The service member plaintiffs' claims are ripe, and they are not required to exhaust administrative remedies before challenging the ban. *Id.* at 37–39. As Plaintiffs argued in their motion, each of these conclusions is fully supported by Supreme Court and Third Circuit precedent. This Court should reach the same result.

Defendants offer various criticisms of the *Talbott* decision, none of which has merit or requires a different result here. First, they argue that the court was wrong to conclude that the challenged policy bans all transgender troops. Defs.' Br. at 19. But the court's opinion lays out with precision the manner in which the ban prevents transgender troops from serving. The court found that the Hegseth Policy is "aimed squarely at transgender persons," banning anyone who has a diagnosis, history, or symptoms consistent with gender dysphoria; a history of cross-sex hormone therapy "in pursuit of sex transition"; a history of sex reassignment or genital reconstruction surgery; "has transitioned or attempted to transition to a sex other than their birth sex"; or "is not willing to serve in their birth sex." *Talbott* Decision at 20–21. The

exemption allowing for waivers "is one in name only." *Id.* at 21. For a transgender person to obtain a waiver, she would need to establish that "(1) she has been stable in her birth sex for 36 consecutive months; (2) she has never transitioned or attempted to transition to anything other than her birth sex; and (3) she is willing (against medical advice) to serve in her birth sex." *Id.* at 21. "Virtually no one can meet all these criteria," and for a transgender person to attempt to do so would require them to suppress their gender identity and live in their birth sex, a requirement that is "not merely uncomfortable—it is psychologically harmful and can lead to significant distress, depression, and other serious mental health conditions." *Id.* at 21 & n.17. This is a ban on transgender military service. Full stop.

Second, Defendants argue that "the *Talbott* court erred in independently weighing the evidence underlying that policy and in concluding that there was insufficient evidence supporting the policy." Defs. Br. at 29. In effect, Defendants argue for the complete abdication of any meaningful judicial review of Executive Branch policies involving military affairs, no matter how insufficient the evidence supporting them may be, and no matter how laden they may be with class-based animus. In Defendants' view, the Court must unquestioningly accept any asserted facially legitimate rationale that the Executive Branch may articulate, whether any meaningful study or review has occurred and regardless of whether the evidence rationally supports a connection between the policy and the asserted policy

objectives. The relevant precedents do not support this extreme view of deference. *See Dillard v. Brown*, 652 F.2d 316, 320 (3d Cir. 1981) ("The military has not been exempted from constitutional provisions that protect the rights of individuals, even though the rights of those in the armed forces may differ from those of civilians."). To the contrary, federal courts have consistently been willing to enjoin military policies that violate equal protection or infringe on constitutional liberties.[1] And as the *Talbott* court correctly observed, deference to the "considered professional judgment" of "appropriate military officials," *Goldman v. Weinberger,* 475 U.S. 503, 509 (1986), requires that those officials have "acted with 'deliberate consideration,' rather than 'unthinkingly' or 'reflexively.'" *Talbott* Decision at 42 (quoting *Rostker v. Goldberg*, 453 U.S. 57, 72, 83 (1981)).

Third, Defendants fault the *Talbott* court for distinguishing the rushed manner in which the Military Ban was adopted from President Biden's issuance of Executive Order 14004 (lifting the prior ban), suggesting that the 2018 Mattis report "was no more 'stale' than the 2016 report on which the President Biden relied when he changed course within days of taking office." Defs.' Br. at 33. But that argument ignores that, in addition to the 2016 Rand Report, President Biden relied on

---

[1] *See, e.g., Singh v. Berger,* 56 F.4th 88, 92 (D.C. Cir. 2022); *Roe v. Dep't of Def.*, 947 F.3d 207, 234 (4th Cir. 2020); *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 840 (N.D. Tex. 2022). This Court should likewise decline Defendant's invitation to replace appropriate deference with unwarranted abdication.

contemporaneous testimony by the then-serving Chief of Staff and high-ranking officials from each of the branches that "they were not aware of any issues of unit cohesion, disciplinary problems, or issues of morale resulting from open transgender service," as well as an extensive report by former United States Surgeons General concluding "that transgender troops are as medically fit as their non-transgender peers and that there is no medically valid reason—including a diagnosis of gender dysphoria—to exclude them from military service…." ECF No. 18-7 (EO14004). In contrast, as the *Talbott* court found: "EO14183 and the Hegseth Policy provide nothing to support Defendants' view that transgender military service is inconsistent with military readiness." *Talbott* Decision at 3.

## II. Plaintiffs Are Already Suffering Irreparable Harm and Face the Imminent Irreparable Harm of Involuntary Separation For A Characteristic Unrelated to their Ability to Serve

### A. The Uncontradicted Record Shows Plaintiffs Will Suffer Irreparable Harm

Defendants' opposition brief makes several critical concessions that confirm Plaintiffs will suffer irreparable harm absent a temporary restraining order. Defendants admit that service members like Plaintiffs who have transitioned will be processed for separation. Defs.' Br. at 10, 21. The uncontradicted record shows that these two Plaintiffs have transitioned. ECF No. 4-3 ¶¶ 9, 16 ("Ireland Decl."); ECF No. 4-4 ¶ 8 ("Bade Decl.").

Defendants contend that they will not begin identifying service members targeted for separation until March 26, and that no clear guidance has been issued on how that identification will occur. Defs.' Br. at 19. Yet they fail to dispute that Plaintiffs have already been identified. Pls.' Br. at 14. That is why they were removed from their duties. *Id.* Both Plaintiffs are currently on administrative absence because they are transgender and because they cannot serve in their birth sex as now required. *Id.* And, in any case, the memo filed in *Talbott* today accompanying Defendants' motion to dissolve the Preliminary Injunction provides the guidance for identifying service members Defendants argued was forthcoming. Ex. A.

Importantly, there is no path for these Plaintiffs to avoid administrative separation proceedings. The February 26 Policy memorandum makes clear that service members who cannot adhere to the standards associated with their birth sex will be separated. ECF No. 1-8 ("Implementing Policy"). The March 21 memorandum confirms it. Ex. A. The Plaintiffs before this Court cannot and will not be able to meet this requirement.

Defendants' suggestion that Plaintiffs have not suffered irreparable harm strains credulity. Their commands and fellow service members will know they were pulled from duty because military policy now deems them unfit to serve, despite their demonstrated courage and valor. *See* Bade Decl. at ¶¶ 22–25 (describing impacts of removal from deployment). The initiation of administrative separation

proceedings will further damage their reputations in ways that cannot be remedied after the fact.

Administrative separation is the military's process for discharge in cases of serious misconduct or failure to meet standards. ECF No. 4-9, ¶ 16 ("Soper Decl."); ECF No. 4-10, ¶ 63 ("Wagner Decl.") These two Plaintiffs have committed no such infractions. The level of detail or duration of these proceedings is irrelevant, *see* Defs.' Br. at 2, because the initiation of these proceedings will permanently tarnish their reputations and reveal personal information to any remaining service members in their units who may not yet know they are transgender. Moreover, these proceedings are premised on the notion that Plaintiffs are somehow lacking in the "honesty, humility, uniformity, and integrity" described in the Policy. ECF Nos. 1-4 (EO14183), 1-8 (Implementing Policy), 1-9 (Clarifying Guidance).

Plaintiffs have already suffered irreparable harm, and they respectfully ask this Court to prevent them from facing further irreparable injury by being subjected to administrative separation while the merits assessment proceeds.

**B.    The Government's Citations to Third Circuit Authority Pertaining to Irreparable Harm are Inapposite.**

Ignoring the multiple species of irreparable harm Plaintiffs have and will suffer, *supra*, the Government cites Third Circuit case law to minimize the impact of the constitutional harm suffered by Plaintiffs on the irreparable injury analysis.

Defs.' Br. at 13–14. In doing so, Defendants mischaracterize both the case law and Plaintiffs' harms.

First, unlike in *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, the constitutional harms at issue here are not abstract or speculative. 108 F.4th 194 (3d Cir. 2024), *cert. denied*, 2025 WL 76443 (U.S. Jan. 13, 2025) (involving challenge by prospective firearms purchasers to a yet-to-be-enforced law barring sale of certain assault weapons). Plaintiffs have spent years building their reputation as highly capable warfighters and, since the ban, have already been removed from service and branded as unfit in the eyes of their leadership and peers. Ireland Decl. at 2–5; Bade Decl. at 1–5. They now face the prospect of separation due exclusively to their status as transgender individuals. Nothing about these immediate, severe, and irreparable harms is speculative.

Further, contrary to the Government's suggestion, courts in this district have found constitutional violations with associated concrete harms to constitute a near *per se* form of irreparable injury. *See Kyocera Document Sols. Am., Inc. v. Div. of Admin.*, 708 F. Supp. 3d 531, 558 (D.N.J. 2023) ("[E]nforcement of an unconstitutional statute against Plaintiff supports the finding of irreparable harm requiring the issuance of a permanent injunction"); *see also Ass'n for Fairness in Bus., Inc. v. New Jersey,* 82 F. Supp. 2d 353, 363–64 (D.N.J. 2000) (irreparable harm was "buttressed" by constitutional equal protection violation against businesses).

Third, the Government's reliance on *Nelson v. Miller*, 373 F.2d 474, 480 (3d Cir. 1967), a nearly sixty-year-old case, is misplaced. *See* Defs.' Br. at 14. While *Nelson* involved the discharge of a service member, the service member's only constitutional challenge to his discharge was to the process by which it occurred. 373 F.2d at 480 (noting Plaintiff's procedural due process challenge but declining to address it). By contrast, Plaintiffs here challenge as unconstitutional the legal *basis* for their discharge. *See also Adkins v. Rumsfeld*, 389 F. Supp. 2d 579, 588–89 (D. Del. 2005) (distinguishing *Nelson*, finding that "[i]n this case, the relief Plaintiff requests goes beyond the parameters of his service records and extends to injunctive relief against future violations of [their constitutional] rights.")

Finally, the Government's effort to reduce this case to an everyday employment dispute belittles Plaintiffs' injury. Plaintiffs are seeking not compensatory relief, but declaratory and injunctive relief; their aim is not simple recompense, but constitutionally guaranteed equal treatment by the institution to which they have committed their careers, and quite literally their lives. Even the prospect of an "honorable" discharge is no recompense, *see* Defs.' Br. at 14; military service is not just a job, but a calling, and Plaintiffs do not want to be discharged at all, much less in a demeaning proceeding ordinarily reserved for those who engage in misconduct or who cannot meet standards, the initiation of which alone marks a stain on their careers. *See United States v. Alvarez*, 567 U.S. 709, 715 (2012)

(characterizing the "supreme and noble duty of contributing to the defense of the rights and honor of the nation"). By denying Plaintiffs' their right to serve for immutable characteristics that have no bearing on their ability to serve, the Government treats Plaintiffs like second-class citizens.

### III. Plaintiffs are Entitled to a Temporary Restraining Order Notwithstanding the D.C. District Court's Preliminary Injunction

Plaintiffs respectfully submit that individualized relief from this Court remains necessary for several compelling reasons.

First, the injunction in *Talbott* remains subject to appeal and possible stay pending appeal, creating uncertainty for Plaintiffs, who face imminent and irreparable harm. *Talbott* Decision at 79 ("The Court knows that this opinion will lead to heated public debate and appeals"). The *Talbott* Court stayed the effect of its own injunction in anticipation of Defendants seeking a stay. *Talbott* Order. And this morning Defendants moved to dissolve the injunction or stay it pending appeal. The D.C. Circuit, the Supreme Court, or even the District Court, could independently stay all or part of the injunction during appellate review, potentially leaving Plaintiffs unprotected at a moment when they can least afford uncertainty regarding their military careers.

Second, Defendants have repeatedly argued against facial relief in *Talbott*. *Talbott* Decision at 78. Proceedings in *Talbott* are ongoing and if the appellate court grants a request by Defendants to narrow the scope of relief, these Plaintiffs—who

are not parties in *Talbott*—could immediately lose their protection. This potential outcome necessitates individualized protection through this Court's intervention.

Third, even assuming the *Talbott* injunction remains in place, given the size and complexity of the military and the chaotic roll out of the ban, *see* ECF No. 4-8 at ¶ 42 ("Skelly Decl."); Wagner Decl. at ¶ 70, there exists a material risk that Plaintiffs could be overlooked during Defendants' implementation of injunction compliance measures. A TRO in this case would eliminate this risk by providing clear, individualized direction to the Department of the Air Force to which Defendants must comply.

Fourth, if, as Defendants acknowledge, the *Talbott* injunction in its current form protects Plaintiffs, Defendants will suffer no additional burden by complying with the requested TRO in this case. The requested relief would merely require Defendants to ensure compliance with obligations that—by their own admission—already exist under the current *Talbott* injunction.

Finally, the purpose of preliminary injunctive relief is to preserve the status quo pending a merits ruling. Given the fluid and evolving nature of the parallel litigation, and the fact that Plaintiffs face imminent loss of devoted military careers—a harm that courts have consistently recognized as irreparable, *see* Pls.' Br. at 15 (collecting cases)—the interest of justice favors granting the requested TRO to ensure continuous protection regardless of developments in the *Talbott* case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a temporary restraining order preventing Defendants from initiating administrative separation proceedings against them, and other relief as stated in the order to show cause.

DATED: March 21, 2025

Respectfully submitted,

| | |
|---|---|
| **GLBTQ LEGAL ADVOCATES & DEFENDERS**<br><br>Jennifer Levi<br>   (*pro hac vice pending*)<br>Michael Haley (*pro hac vice application forthcoming*)<br>18 Tremont Street, Suite 950<br>Boston, MA 02108<br>617.426.1350<br>jlevi@glad.org<br>mhaley@glad.org<br><br>**NATIONAL CENTER FOR LESBIAN RIGHTS**<br><br>Shannon P. Minter (*pro hac vice application forthcoming*)<br>870 Market Street, Suite 370<br>San Francisco, CA 94102<br>415.392.6257<br>sminter@nclrights.org | **STAPLETON SEGAL COCHRAN LLC**<br><br>By: */s/ John S. Stapleton*<br>   John S. Stapleton, ID 032622005<br>Eli Segal, ID 030792007<br>Jonathan Cochran, ID 028142012<br>Lowry Yankwich, ID 418582022<br>Four Greentree Centre<br>601 Route 73 N, Suite 303<br>Marlton, NJ 08053<br>856.259.3300<br>jstapleton@stapletonsegal.com<br>esegal@stapletonsegal.com<br>jcochran@stapletonsegal.com<br>lyankwich@stapletonsegal.com<br><br>**LANGER GROGAN & DIVER P.C.**<br><br>By: */s/ John Grogan*<br>   John Grogan, ID 026971993<br>Mary Catherine Roper (*pro hac vice application forthcoming*)<br>Daniel Nagdeman (*pro hac vice application forthcoming*)<br>1717 Arch Street, Suite 4020<br>Philadelphia, PA 10001<br>215.320.5662<br>jgrogan@langergrogan.com<br>mroper@langergrogan.com<br>dnagdeman@langergrogan.com |

*Attorneys for Plaintiffs*