UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOGAN IRELAND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PETER B. HEGSETH, in his official capacity as Secretary of Defense, *et al.*, <br><br> Defendants. | No. 25-cv-01918 <br><br> **TEMPORARY RESTRAINING ORDER** |

**THIS MATTER** comes before the Court by way of a Motion for a Temporary Restraining Order ("TRO") filed by Plaintiffs Logan Ireland and Nicholas Bear Bade (collectively, "Plaintiffs"). (ECF No. 4). Plaintiffs request a TRO to prevent Peter B. Hegseth, in his official capacity as Secretary of Defense; the United States of America; Gary Ashworth, in his official capacity as Acting Secretary of the Air Force; and the United States Department of the Air Force (collectively, "Defendants") from initiating involuntary separation proceedings against them pursuant to a January 27, 2025 Executive Order, titled "Prioritizing Military Excellence and Readiness," ("EO 14183") and subsequent Implementing Guidance issued by the Secretary of Defense and the Air Force in January, February, and March 2025 (collectively, "Orders"). Having considered Plaintiffs' Motion and Reply, (ECF Nos. 4, 25); Defendants' Opposition, (ECF No. 21); and the arguments of the parties at the March 24, 2025 hearing, the Court **GRANTS** Plaintiffs' Motion for a 14-day TRO effective immediately upon entry of this Order. The Court makes the following findings of fact and conclusions of law.

I.   FACTUAL BACKGROUND

Plaintiffs Master Sergeant Ireland and Staff Sergeant Bade are both transgender men

currently serving in the United States Air Force. (Pls.' Mot., ECF No. 4 at 15, 18; Compl., ECF No. 1 at ¶¶ 2, 9). Both Plaintiffs have exemplary service records: Master Sergeant Ireland, who has honorably served for over fourteen years including deployment to Afghanistan, South Korea and the United Arab Emirates, has earned four Air Force Commendation Medals, two Air Force Achievement Medals, two Military Outstanding Volunteer Service Medals, and three Non-Commissioned Officer of the Year awards, while Staff Sergeant Bade, who has honorably served for over six years including deployment in Kuwait as a member of the base's Security forces, has received a Diamond Sharp Award, a Wing level scholarship, the Military Outstanding Volunteer Service Medal, and an Achievement Medal. (Pls.' Mot., ECF No. 4 at 16, 19; Compl., ECF No. 1 ¶¶ 14-15, 42, 45). At the time the challenged Orders took effect, Master Sergeant Ireland was part of a training program at Joint Base McGuire-Dix-Lakehurst in New Jersey, and Staff Sergeant Bade was deployed to Ali Al Salem Airbase in Kuwait. (Pls.' Mot., ECF No. 4 at 17–18; Compl., ECF No. 1 ¶¶ 11, 42). Following the Orders, which require transgender service members to adhere to regulations based on their birth sex and effectively prohibit transgender individuals from serving in the United States military,[1] Plaintiffs were subjected to immediate adverse actions, including forced administrative absence and removal from their training assignments and active deployment. (Pls.' Mot., ECF No. 4 at 17–18, 20; Compl., ECF No. 1 at ¶¶ 3, 24–27, 51–52). Plaintiffs face further imminent harm in the form of involuntary separation proceedings expected to begin as early as March 26, 2025. (Pls.' Mot., ECF No. 4 at 18, 20; Compl., ECF No. 1 at ¶¶ 3, 32, 59); *see*

---

[1] *See* EO 14183, ECF No. 1-4; Jan. 31, 2025 Sec. of Defense Memo, ECF No. 1-5; Feb. 4, 2025 Air Force Implementing Memo, ECF No. 1-6; Feb. 7, 2025 Sec. of Defense Memo, ECF No. 1-7; Feb. 26, 2025 Additional Guidance on Prioritizing Military Excellence and Readiness, ECF No. 1-8; Feb. 28, 2025 Clarifying Guidance on Prioritizing Military Excellence and Readiness, ECF No. 1-9; Mar. 1, 2025 Additional Guidance for Executive Order 14183, ECF No. 1-10.

*also* Feb. 26, 2025 Additional Guidance on Prioritizing Military Excellence and Readiness, ECF No. 1-8 at §§ 4.3–4.4 (setting forth the procedure for administratively separating transgender service members)). These harms are immediate, ongoing, and significant, and cannot be remedied in the ordinary course of litigation. Accordingly, a TRO against Defendants, as provided below, is necessary until the Court can consider Plaintiffs' forthcoming motion for a preliminary injunction.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. FED. R. CIV. P. 65; *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991). Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–1427 (3d Cir. 1994) (quoting *Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). To obtain relief, the moving party must show: (1) a likelihood of success on the merits; (2) they will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (citation omitted). Where, as here, the defendants are government entities or official sued in their official capacities, the balance of equities and the public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

While courts must balance all four factors, *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982), this Circuit has placed significant weight "on the probability of irreparable harm and the likelihood of success on the merits" factors. *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990)). A court should only issue an injunction "if the plaintiff produces evidence

sufficient to convince the district court that all four factors favor preliminary relief." *AT&T*, 42 F.3d at 1427.

### III. DISCUSSION

As an initial matter, Plaintiffs have made the threshold showings necessary to proceed on their Motion for a TRO. Specifically, the Court finds that: (1) it has jurisdiction over Defendants and the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1343; (2) no security bond is required under Rule 65(c) because the injunction does not subject Defendants to compensable monetary losses, *Globus Med., Inc. v. Vortex Spine, LLC*, 605 F. App'x 126, 129 (3d Cir. 2015); *see also Talbott v. United States*, No. 25-cv-240, 2025 WL 842332, at *36–37 (D.D.C. Mar. 18, 2025) (finding entry of preliminary injunction on same Orders did not harm defendants); and (3) Plaintiffs were not required to exhaust their administrative remedies because all three exceptions to the exhaustion doctrine apply here. That is, (1) the Orders present a clear and unambiguous violation of constitutional rights; (2) resort to administrative procedures would be "inadequate to prevent irreparable injury;" and (3) exhaustion is "futile," as there is no doubt as to the outcome of any separation actions based on the plain language of the Orders. *See Facchiano v. U.S. Dep't of Lab.*, 859 F.2d 1163, 1167–1168 (3d Cir. 1988) (citation omitted).

#### A. Issuance of a Temporary Restraining Order is Appropriate.

The Court finds that Plaintiffs have easily met their burden to satisfy the four elements favoring issuance of a TRO.

First, Plaintiffs have demonstrated a likelihood of success on the merits of their claims that the Orders, at a minimum, violate the Equal Protection Clause of the Fifth Amendment. (Pls.' Mot., ECF No. 4 at 24–48); *see also Talbott*, 2025 WL 842332 (granting nationwide injunction). The Court finds the district court's reasoning in *Talbott* to be thorough and persuasive, and the

Court is inclined to agree with much of it. Specifically, the Court finds Plaintiffs have demonstrated a likelihood of success on the merits because (1) the Orders classify Plaintiffs based on their sex and thus warrant intermediate scrutiny;[2] and (2) Defendants cannot meet their burden to show an "exceedingly persuasive" justification for such differential treatment. *United States v. Virginia*, 518 U.S. 515, 531 (1996).

Second, Plaintiffs have established irreparable harm.[3] Specifically, Plaintiffs have already been pulled from their assignments and forced on administrative absence and face imminent involuntary administrative separation proceedings that would cause lasting damage to their otherwise exemplary military careers and reputations. (Pls.' Mot., ECF No. 4 at 21–23). Such adverse actions clearly constitute irreparable harm, whether framed as the loss of their military

---

[2] In the alternative, the Court concludes that intermediate scrutiny is appropriate because transgender individuals meet the criteria for a quasi-suspect class. Despite Defendants' argument otherwise, doing so is not novel. Rather, this Court follows numerous circuit and district courts, including courts within this Circuit, which have recognized that classifications based on transgender status warrant heightened scrutiny. See *Evancho v. Pine–Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017); *see also Talbott*, 2025 WL 842332, at *25–28; *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610–613 (4th Cir. 2020), *as amended* (Aug. 28, 2020); *Karnoski v. Trump*, 926 F.3d 1180, 1200 (9th Cir. 2019); *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 872–74 (S.D. Ohio 2016); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 140 (S.D.N.Y. 2015).

[3] The Court also rejects Defendants' contention that a TRO is unnecessary due to the preliminary injunction entered in *Talbott*. (Defs.' Opp., ECF No. 21 at 18). There is a pending motion to dissolve, and the injunction in *Talbott* could be stayed or reversed at any time, leaving Plaintiffs without protection. The existence of another court's preliminary injunction—especially one subject to ongoing challenge—is no basis to deny Plaintiffs the emergency relief they independently merit. See *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410, 421, 423 (9th Cir. 2019) (explaining that no precedent supports the view that one court's nationwide injunction deprives another court of jurisdiction to consider similar equitable relief and emphasizing the importance of allowing legal issues to develop across multiple jurisdictions), *cert. granted, judgment vacated on other grounds*, *Little Sisters of Poor Jeanne Jugan Residence v. California*, 141 S. Ct. 192 (2020); *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279–86 (11th Cir. 2021) (same).

careers,[4] *Nelson v. Miller*, 373 F.2d 474, 479–480 (3d Cir. 1967) (finding "discharge itself may result in irreparable harm" notwithstanding possible reinstatement);[5] *Crawford v. Davis*, 249 F. Supp. 943, 946 (E.D. Pa. 1966) (finding general discharge under honorable conditions caused irreparable harm due to "injury and stigma attached" despite possibility of reinstatement); damage to reputation, *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 601 (3d Cir. 1979) (finding irreparable injury established where eviction from place of employment harmed plaintiff's business and reputation and denied him the right to pursue his professional license); *Talbott*, 2025 WL 842332, at *36 (finding same Orders caused "irreparable reputational stigma" to servicemembers); disclosure of Plaintiffs' personal information, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 (6th Cir. 1998) (finding irreparable harm stemming from release of personal information because "[n]o remedy at law could adequately compensate [plaintiffs] for any physical, psychological, or emotional trauma they might suffer at the hands of one obtaining this personal information"); *Doe v. Megless*, 654 F.3d 404, 410 (3d Cir. 2011) (suggesting disclosure of highly sensitive personal information would be irreparable harm); the loss of the opportunity

---

[4] While Defendants attempt to frame the harm to Plaintiff as a mere "loss of employment," (Defs.' Opp., ECF No. 21 at 19–20), this grossly undervalues that which is at stake for Plaintiffs. The loss of military service under the stigma of a policy that targets gender identity is not merely a loss of employment; it is a profound disruption of personal dignity, medical continuity, and public service. Plaintiffs' involuntary loss of decorated military status, military healthcare, and the ability to serve their country under a policy they have faithfully abided by for years cannot be repaired by monetary damages.

[5] It is hard to imagine how Defendants can cite *Nelson v. Miller* with a straight face to argue that there is no irreparable harm here because Plaintiffs can supposedly obtain relief later from the relevant record correction board. (Defs.' Opp., ECF No. 21 at 20). *Nelson* squarely recognized that "post-discharge review may be inadequate by the very fact that the interim between discharge and board action harbors a potential for irreparable harm, notwithstanding possible reinstatement." 373 F.2d at 479. *Nelson* also acknowledged that requiring a servicemember "to submit to needless harm even in a case of a patently meritorious claim" would be "unjust." *Id*. at 480. In short, *Nelson* actually supports Plaintiffs' position—not Defendants' position. Quoting it for the opposite proposition can only result from inattention or invention.

for skill-building and camaraderie, *Hecox v. Little*, 79 F.4th 1009, 1036 (9th Cir. 2023) (finding exclusion of a transgender athlete constituted irreparable harm due to deprivation of opportunity to improve skills and experience team camaraderie); or the harms stemming from an unconstitutional policy,[6] *Miller v. Sessions*, 356 F. Supp. 3d 472, 485 (E.D. Pa. 2019) (explaining the deprivation of a constitutional right "for even minimal periods of time, unquestionably constitutes irreparable injury") (quoting *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). Being summarily and involuntarily dismissed from military service after years of unblemished and decorated service under the cloud of being suddenly deemed unfit and disqualified for military service for no reason other than one's gender identity is irreparable harm.

Finally, the balance of equities and public interest warrants issuing a TRO. As discussed above, Plaintiffs face severe personal and professional harm absent a preliminary injunction. In contrast, Defendants have not demonstrated any compelling justification whatsoever for immediate implementation of the Orders, particularly since transgender persons have been openly serving in the military for a number of years. *Talbott*, 2025 WL 842332, at *37 (explaining that defendants were unable to provide any testimony regarding the burden an injunction would place on the military). Additionally, granting temporary relief is in the public interest, as it prevents unconstitutional discrimination and maintains the status quo of policies that have now governed the military for years. *Fulton v. City of Phila.*, 922 F.3d 140, 165 (3d Cir. 2019) (deterring

---

[6] While "[c]onstitutional harm[s are] not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction," *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989), the Third Circuit in *Hohe* set forth considerations for when an infringement on constitutional rights rises to the level of irreparable harm. Specifically, courts should look for: (1) "a chilling effect;" (2) "a purposeful unconstitutional government suppression of [constitutional rights];" and (3) a "direct penalization, as opposed to incidental inhibition, of [constitutional rights]." *Id.* (cleaned up) (citations omitted); While the Third Circuit has not articulated the precise metric for balancing these considerations, the Court has no trouble finding that all three exist in this case and warrant the finding of irreparable harm.

discrimination is a "paramount public interest"); *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994) ("A primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered."); *see also Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cty.*, 39 F.4th 95, 109 (3d Cir. 2022) (finding strong public interest in upholding constitutional rights).

*   *   *   *   *

For the foregoing reasons,

**IT IS HEREBY** on this 24th day of March, 2025,

**ORDERED** that Plaintiffs' Motion, (ECF No. 4), is **GRANTED.** Defendants and all their respective officers, agents, servants, employees and attorneys, and any person in active concert or participation with them are hereby fully enjoined from initiating administrative separation proceedings against Plaintiffs based on their transgender status and are further enjoined from enforcing or implementing any aspect of the Orders as to Plaintiffs; and

**ORDERED** that Defendants **immediately** provide notice of this Court's Order to all relevant personnel to ensure full and complete compliance; and it is finally

**ORDERED** that this Temporary Restraining Order shall remain in effect for fourteen days from the date of this Order, unless otherwise extended by the Court.

**CHRISTINE P. O'HEARN**
**United States District Judge**